IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

KIMBERLY BROOMFIELD, as Personal
Representative of the Estate of RAMON
BROOMFIELD                                                                                    PLAINTIFF

v.                                          Case No. 1:22-cv-01027

MIKE LOE in his Official Capacity as Sheriff of
the COLUMBIA COUNTY SHERIFF'S
DEPARTMENT; JORDAN HANSON,
Individually and in his Official Capacity as a
Deputy of the Columbia County Sheriff's
Department; HUNTER SCOTT, Individually and
in his Official Capacity as a Deputy of the
Columbia County Sheriff's Department; MIKE
McWILLIAMS, in his Official Capacity as Patrol
Captain Supervisor of Defendant Jordan Hanson;
DONNIE ANSWORTH in his Official Capacity
as a Sergeant of the Columbia County Sheriff's
Department and Supervisor of Defendant Jordan
Hanson; JERRY MANESS in his Official
Capacity as a Sergeant of the Columbia County
Sheriff's Department and Supervisor of
Defendant Jordan Hanson; & JOHN DOES I-X                                          DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Motion for Summary Judgment. ECF No. 19. Plaintiff responded. ECF No. 24. Defendants replied. ECF No. 27. The matter is ripe for consideration. For the following reasons, the motion will be granted.

### I. BACKGROUND

The Court first notes that Defendants provide affidavits, deposition transcripts, and video in support of their Statement of Facts. ECF No. 21. In Plaintiff's response to Defendants' Statement of Facts, Plaintiff does not support her denials with any reference to the record except for Paragraph 13. ECF No. 21. Plaintiff denies the allegation in Paragraph 13 and supports her denial with an attached exhibit, which is the Report of Mr. Robin Lyles, a retired Law Enforcement

Officer who had reviewed the evidence in the record and formed an opinion based upon that evidence. ECF No. 25-1.

   A. **Factual Background**

On March 13, 2021, Plaintiff, Kimberly Broomfield, and her husband, Ramon Broomfield ("Decedent"), attended a large-scale all-terrain vehicle ("ATV") riding event at Stefan Cooper's house on County Road 30 in Columbia County, Arkansas. After some time, Plaintiff and Decedent left the event on separate ATVs. Plaintiff's niece rode on the back of Plaintiff's ATV and Decedent rode alone.

Just after 7 p.m., Columbia County Deputy Hunter Scott ("Defendant Scott") observed the two ATVs enter and begin driving on the highway, which is unlawful in the State of Arkansas. Defendant Scott got into his vehicle, activated his lights and sirens, and quickly pulled in behind the two ATVs. Plaintiff and Decedent continued down the road on their ATVs. Defendant Scott followed the ATVs and radioed ahead to Columbia County Deputy Jordan Hanson ("Defendant Hanson"), who he knew was on duty and sitting in his vehicle in a parking lot north of Defendant Scott, Plaintiff, and Decedent. Defendant Scott notified Defendant Hanson that the two ATVs were headed in his direction. Defendant Scott continued talking to Defendant Hanson by radio as the ATVs headed in Defendant Hanson's direction and told Defendant Hanson that he was behind the ATVs and trying to get them to pull over. Shortly thereafter, Defendant Hanson saw the ATVs approaching with Defendant Scott trailing behind them with his lights and siren activated. As the two ATVs passed Defendant Hanson's location, Defendant Hanson activated his own lights and siren. With his window down, Defendant Hanson heard one of the ATV occupants yell out an expletive.

Defendant Hanson pulled onto the highway behind Defendant Scott's vehicle and they both continued to follow the two ATVs with their lights and sirens activated. After following both ATVs for a short time, Plaintiff, driving one of the ATVs with her niece on the back, moved to the shoulder of the road near Columbia County Road 425. Defendant Scott slowed and pulled in behind that ATV while Defendant Hanson continued following the ATV driven by Decedent with his lights and siren still activated. Shortly up the road, but out of sight of Defendant Scott and Plaintiff, Decedent turned right onto Columbia County Road 30, continuing to flee. After Decedent turned onto County Road 30, Defendant Hanson got closer to the ATV to obtain a description, which he relayed to dispatch.

Defendants assert that the following events occurred next:

> After pursuing the ATV for some time to no avail, [Defendant] Hanson passed it on the left and got in front of the ATV and began slowing down to try to get the ATV to stop. In response, the ATV left the roadway and entered an open field, where he followed it at a low speed. Being careful not to make contact, [Defendant] Hanson tried to get the ATV to stop, but its operator managed to evade [Defendant Hanson] again and entered back into the roadway. As he was following the ATV back onto the road . . . , [Defendant] Hanson made contact with the County Road 542 sign with the front of his truck, but ultimately got in behind the ATV again. At that point, the ATV and [Defendant Hanson] continued south on County Road 30.

Plaintiff asserts that the actions of Defendant "Hanson were contrary to his training and any applicable law enforcement training." ECF No. 26, p. 2. Plaintiff also states that "the claims that [Defendant] Hanson damaged his vehicle by hitting County Road 542, as opposed to [Decedent's] ATV is unsupported." *Id.* at 2.

Defendant Scott radioed to Defendant Hanson who let Defendant Scott know that he was going to disregard the pursuit shortly. However, Defendant Hanson decided to make one more attempt to end the situation safely. While southbound on County Road 30, Defendant Hanson passed the ATV on the left, and positioned his vehicle in front of the ATV so that he could

hopefully bring the ATV to a controlled stop. Defendants assert that as Defendant Hanson began to reduce the speed of his vehicle, Decedent aggressively sped up and evaded Defendant Hanson, leaving the roadway on the left. Defendants further state that when "the ATV left the roadway, it struck several trees very hard and spun around until it was facing the opposite direction." ECF No. 21, p. 4. Defendant Hanson then advised dispatch that the ATV had wrecked. Plaintiff states that there is no evidence that Decedent "aggressively sped up" or of Decedent's speed on that ATV. Plaintiff also states that "[h]ow the ATV got turned around, whether by hitting a tree or by being hit by a deputy is a fact in dispute." ECF No. 26, p. 3.

Defendant Hanson stopped his vehicle immediately after the ATV wrecked and got out to check on Decedent. Defendant Hanson located Decedent laying on the ground between the ATV and the trees. Decedent was unresponsive, so Defendant Hanson immediately called for an ambulance. After calling for an ambulance, Defendant Hanson approached Decedent and noticed the heavy odor of alcohol and a pistol in a holster on Decedent's hip, which Defendant Hanson secured in his vehicle for safety reasons.[1] Defendant Hanson also observed alcohol in the cooler attached to the ATV.

Quickly after the wreck, Defendant Scott and another officer arrived at the scene and the accompanying officer performed CPR on Decedent. The Columbia County ambulance service arrived shortly thereafter and took over medical aid until they removed Decedent from the scene. Decedent was pronounced dead upon arrival at the Columbia County Detention Center. On autopsy, the state medical examiner's office determined that Decedent's death was caused by multiple blunt force injuries and that his manner of death was an accident. Decedent's post-

---

[1] Decedent was a convicted felon at the time.

mortem toxicology screen revealed his blood alcohol level was approximately three times the legal limit.

Defendants assert that Defendant Hanson did not perform a Precision Immobilization Technique ("PIT") maneuver at any time and that Defendant Hanson's vehicle never came into contact with Decedent's ATV. Plaintiff disagrees and states that "[w]hether or not there was a PIT maneuver attempted or performed is a fact in dispute," as is whether or not Defendant Hanson's vehicle came in contact with Decedent's. ECF No. 26, p. 3.

Columbia County has, and had at the time of the incident, constitutionally appropriate policies in place to govern vehicle pursuits and the use of force by deputies.[2] The Columbia County Sheriff and upper-level supervisors necessarily delegate, and did at the time of the incident, responsibility for most day-to-day activities to subordinate officers through a chain of command in each division. Those officers are expected to perform those day-to-day tasks pursuant to the policies the Sheriff implemented for the department. This chain of command, in addition to other mechanisms such as camera systems, report policies, post-incident investigations, and other mechanisms, also provided for the comprehensive supervision of department employees. Patrol duties at the Columbia County Sheriff's Department are, and were at the time of the incident, trained under a comprehensive training system that meets or exceeds the requirements of state law. This training is for three months and includes the certification at the Arkansas Law Enforcement Training Academy ("ALETA"), training and annual qualifications in the use of firearms, extensive

---

[2] Plaintiff admits to paragraph 24 of Defendants' Statement of Indisputable Material Facts in Support of Motion for Summary Judgment (ECF No. 21) where Defendants state "On March 13, 2021 (as today), Columbia County had constitutionally appropriate policies in place to govern vehicle pursuits and, alternatively (*although no County used force against the Plaintiff's decedent*) the use of force by Deputies. Ex. 3, McWilliams Affidavit & Attached policies." ECF No. 21, p. 5 (emphasis added); ECF No. 26, p. 3.

field training, and training in the policies of the Sheriff's Department, including, but not limited to, policies governing the use of force and pursuit by officers.

### B. Procedural Background

On May 5, 2022, Plaintiff filed this case pursuant to Arkansas law and the United States Constitution alleging eight counts: (I) Direct and Vicarious Liability for Director Mike McWilliams ("Defendant McWilliams") in his official capacity, Sergeant Donnie Ainsworth ("Defendant Ainsworth") in his official capacity, Sergeant Jerry Maness ("Defendant Maness") in his official capacity, and Sheriff Mike Loe ("Defendant Loe") in his official capacity; (II) Direct and Affirmative Negligence of Defendant Hanson; (III) Excessive Force by Separate Defendant Hanson; (IV) Wrongful Death by Separate Defendant Hanson; (V) Outrage by Separate Defendant Hanson; (VI) Violation of 42 U.S.C. § 1983 Related to the Excessive Force of Defendant Hanson; (VII) Violation of 42 U.S.C. § 1983 by Columbia County Sheriff's Department; and (VIII) Violation of the "Fourteen"[3] Amendment of the United States Constitution.[4]  In relevant part, Plaintiff alleges that Defendants violated the constitutional and legal rights of Decedent when Defendant Hanson allegedly engaged in an unsafe and improper PIT maneuver during a police pursuit, negligently causing the death of Decedent.

On September 12, 2023, Defendants filed the instant motion contending that they are entitled to qualified immunity and summary judgment as a matter of law. ECF No. 19. Plaintiff opposes the motion, but only addresses her use of excessive force claim in her response. ECF No. 24.

---

[3] Plaintiff makes a typo alleging a "Violation of the *Fourteen* Amendment of the U.S. Constitution" (emphasis added). However, the Court interprets this count as a Fourth Amendment argument based on the language of the body of the claim, especially Plaintiff's citation to the Fourth Amendment. ECF no. 2, p. 20-21.
[4] Aside from listing him as a party in his official and individual capacity, Plaintiff does not make any claims in her Complaint against Defendant Scott.  Even if she had, Defendant Scott would also be entitled to summary judgment for the reason set forth below.

## II. STANDARD

The standard for summary judgment is well established. A party may seek summary judgment on a claim, a defense, or "part of [a] claim or defense." Fed. R. Civ. P. 56(a). When a party moves for summary judgment, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Krenik v. Cnty. of LeSueur*, 47 F.3d 953, 957 (8th Cir. 1995). This is a "threshold inquiry of . . . whether there is a need for trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they reasonably may be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is material only when its resolution affects the outcome of the case. *Id.* at 248. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id.* at 252.

In deciding a motion for summary judgment, the Court must consider all the evidence and all reasonable inferences that arise from the evidence in a light most favorable to the nonmoving party. *Nitsche v. CEO of Osage Valley Elec. Co-Op*, 446 F.3d 841, 845 (8th Cir. 2006). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Enter. Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). The nonmoving party "may not rest upon mere allegations or denials . . . but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. "A party that fails to respond to any basis of a motion for summary judgment effectively waives any argument in opposition to that aspect of a motion for summary judgment." *See Department of Labor v. EJ's Cleaning Services, Inc.*, 2020 WL 1432048, at *1 (E.D. Ark. March 19, 2020) (citing *Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs.*, 558 F.3d 731, 735 (8th Cir. 2009)).

## III. DISCUSSION

Plaintiff brings suit against Defendants Loe, Hanson, Scott, McWilliams, Ainsworth, and Maness in their official capacities, Defendants Hanson and Scott in their individual capacities, and John Does I-X.[5] Official capacity claims are "functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d. 1254, 1257 (8th Cir. 2010). Thus, Plaintiff's 42 U.S.C. § 1983 official capacity claims are against Columbia County.[6] The Court will first address Plaintiff's tort claims and then address Plaintiff's remaining constitutional violation claims.

### A. State Tort Claims

Plaintiff asserts her first five claims as follows:[7] (1) "Direct and Vicarious Liability for Defendant Mike McWilliams in his Official Capacity as the Director of the Patrol Captain of the Columbia County Sheriff's Department. Sergeant Donnie Ainsworth and Jerry Maness in their official capacity as Supervisors of the Deputies and Mike Loe as Sheriff of the Columbia County Sheriff's Department"; (2) "Direct and Affirmative Negligence of Defendant Jordan Hanson"; (3) "Excessive Force by Separate Defendant Jordan Hanson"; (4) "Wrongful Death by Separate Defendant Jordan Hanson"; and (5) "Outrage by Separate Defendant Jordan Hanson." ECF No. 2. The Court will first address Plaintiff's first four claims and then address the outrage claim.

---

[5] Plaintiff never identified John Does I-X.
[6] Plaintiff also purports to sue Columbia County Sheriff's Department. However, this entity is not subject to suit. *See Brown v. Crittenden Cnty. Sheriff Dep't*, 2007 WL 4191730, at *2 (E.D. Ark. 2007) ("The Eighth Circuit has expressly held that dismissal of a police department is proper in a § 1983 suit because a police department is only a "subdivision of the City" and, therefore, not a 'jurisdictional [entity] suable as such.'" (quoting *Ketchum v. City of West Memphis*, 974 F.2d 81, 82 (8th Cir.1992))).
[7] The Court directly relays Plaintiff's first five claims as written in her Complaint. ECF No. 2. The Court does not correct Plaintiff's grammatical errors.

8

1. **Non-intentional Tort Claims**

Plaintiff expressly makes vicarious liability and negligence claims. Plaintiff's first "excessive force claim" is couched as a negligence claim and the Court interprets it as such. Defendants argue that statutory tort immunity bars any tort claims brought against Defendants. ECF No. 19, p. 6. Plaintiff does not respond to this argument in her response to Defendants' Motion for Summary Judgment. The Court agrees with Defendants. The Arkansas Code affords statutory immunity from tort liability for Arkansas counties and its officials and employees. The Code provides:

> (a) It is declared to be the public policy of the State of Arkansas that all counties, municipal corporations, school districts, public charter schools, special improvement districts, law enforcement agencies for and certified law enforcement officers employed by a public or private institution of higher education, and all other political subdivisions of the state and any of their boards, commissions, agencies, authorities, or other governing bodies shall be immune from liability and from suit for damages except to the extent that they may be covered by liability insurance.
> (b) No tort action shall lie against any such political subdivision because of the acts of its agents and employees.

Ark. Code Ann. § 21-9-301.

This immunity "extends to the city's officials and employees," including separate Defendants Hanson and Scott. *Matthews v. Martin*, 280 Ark. 245, 658 S.W.2d 374, 346 (1983). Defendants are immune from suit for any negligent acts they may commit in the performance of their official duties. *Id.* (holding municipal immunity for governmental functions has been the rule in Arkansas for over a hundred years); *see also Sledge v. City of Pine Bluff by and Through Washington*, 2022 Ark. App. 23, 2009 WL 164288 (finding municipality entitled to statutory immunity under Ark. Code Ann. § 21-9-301 as to claim of gross negligence and reckless

indifference in wrongful death action).[8] Defendants have not waived immunity and have submitted evidence of lack of liability insurance. ECF Nos. 21-1, 21-2. Accordingly, the Court finds that summary judgment should be granted on these claims because of the statutory immunity afforded to government entities and its employees. Thus, the tort claims against Defendants in their official and individual capacities should be dismissed.

### 2. Outrage

Plaintiff makes an outrage claim against separate Defendant Hanson. She alleges that Defendant Hanson "willfully and wantonly engaged in extreme and outrageous conduct towards" Decedent when he performed the alleged PIT maneuver on Decedent's ATV. ECF No. 2, p. 15. Plaintiff states that Defendant Hanson "knew or should have known in light of the surrounding circumstances that his conduct would naturally and probably result in emotional distress and bodily harm or even death to" Decedent. *Id.* Defendants argue that Plaintiff cannot establish the elements of outrage in this case. The Court agrees. The standard for outrage, cited by the Arkansas Court of Appeals is as follows:

> The tort of outrage—also known as the intentional infliction of emotional distress—subjects an actor to civil liability for committing extreme and outrageous behavior. *Sawada v. Walmart Stores, Inc.*, 2015 Ark. App. 549, 473 S.W.3d 60. To succeed on an outrage claim, a plaintiff must demonstrate four elements: (1) the actor intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct; (2) the conduct was "extreme and outrageous," "beyond all possible bounds of decency," and "utterly intolerable in a civilized community"; (3) the actions of the defendant were the cause of the plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was so severe that no reasonable person could be expected to endure it. *Id.* at 15, 473 S.W.3d at 60. The type of conduct that constitutes outrage must be determined on a case-by-case basis. *Holman v. Flores*, 2018 Ark. App. 298, 551 S.W.3d 1. The tort of outrage is narrowly viewed by Arkansas appellate courts, which require clear-cut proof to establish the elements. *Id.* Merely describing conduct as outrageous does not make it so. *Id.* The tort of outrage "should not and does not open the doors of the courthouse to every slight insult or indignity one must endure

---

[8] Section 21-9-301 provides county employees with immunity from civil liability for negligent acts but not intentional torts. *Smith v. Brt*, 363 Ark. 126, 211 S.W.3d 485 (2005).

in life." *Id.* at 6-7, 551 S.W.3d at 4 (*citing Kiersey v. Jeffrey*, 369 Ark. 220, 222, 253 S.W.3d 438, 441 (2007)).

*Duggar v. City of Springdale*, 599 S.W.3d 672, 682 (Ark. Ct. App. 2020).

Plaintiff has put forth no evidence establishing these elements to support her blanket assertions. As such, Defendants are entitled to summary judgment regarding this claim.

### B. Constitutional Claims

Lastly, Plaintiff alleges three constitutional claims: (VI) Violation of 42 U.S.C. § 1983 Related to the Excessive Force of Defendant Hanson; (VII) Violation of 42 U.S.C. § 1983 by Columbia County Sheriff's Department; and (VIII) Violation of the Fourth Amendment of the United States Constitution. Plaintiff's Fourth Amendment claim is unclear, however, the Court interprets Plaintiff's claim as alleging Defendant Hanson attempted to seize Decedent without probable cause[9] or false arrest. Claims for false arrest and for excessive force both arise under the Fourth Amendment. The Court will address the Fourth Amendment claims and then will address Plaintiff's claim against Columbia County.

#### 1. Fourth Amendment Claims

Defendants argue that they are entitled to qualified immunity and summary judgment as a matter of law in regard to Plaintiff's Fourth Amendment claims. The Court agrees.

Qualified immunity shields a government official from liability and the burdens of litigation unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known. *Truong v. Hassan*, 829 F.3d 627, 630 (8th Cir. 2016) (*citing Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Evaluating whether a government official is entitled to qualified immunity requires a two-step inquiry: (1) whether the facts shown

---

[9] Plaintiff seems to conflate reasonable suspicion and probable cause in her claim. The Court will analyze Plaintiff's claim under a probable cause standard as that is what she alleges.

by the plaintiff make out a violation of a constitutional or statutory right; and (2) whether that right was clearly established at the time of the defendant's alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Unless the answer to both of those questions is yes, the defendants are entitled to qualified immunity. *Ehlers v. City of Rapid* City, 846 F.3d 1002, 1008 (8th Cir. 2017) (*quoting Krout v. Goemmer*, 583 F.3d 557, 564 (8th Cir. 2009)). Qualified immunity is a legal question for the court, not the jury, to decide in the first instance cased either on the allegations or, if material facts are in dispute, on the facts found by the jury. *Luckert v. Dodge County*, 684 F.3d 808, 817 (8th Cir. 2012); *see also Littrell v. Franklin*, 388 F.3d 578, 584-85 (8th Cir. 2004). The Court will first address the excessive force claim and then will address Plaintiff's false arrest or lack of probable cause claim.

    a. **Excessive Force**

Plaintiff argues that Defendant Hanson violated Decedent's Fourth Amendment right to be free from excessive force when Defendant Hanson implemented a PIT maneuver on Decedent. To establish a constitutional violation, Plaintiff must "show the amount of force used was objectively unreasonable under the particular circumstances." *Baude v. Leyshock*, 23 F.4th 1065, 1073 (8th Cir. 2022). Circumstances relevant to the reasonableness of the officer's conduct include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009).

Plaintiff fails to show that Defendant Hanson even attempted a PIT maneuver. While Plaintiff asserts that Defendant Hanson engaged in a PIT maneuver in her complaint, she has not put forth any evidence corroborating that allegation. Plaintiff and Defendant Scott were out of sight of the accident and Defendant Hanson testified that he did not perform the maneuver. In her

response to Defendants' Statement of Facts, she simply states that this "is a fact in dispute" without directing the Court to any evidence in the record that would establish that Defendant Hanson performed a PIT maneuver. ECF No. 26, p. 3. Consequently, Plaintiff cannot show that any excessive force was used against Decedent, and thus Plaintiff cannot establish the violation of Decedent's Fourth Amendment right.[10]

Because Plaintiff cannot establish the violation of a constitutional right, Defendants are entitled to qualified immunity and summary judgment regarding this claim. *Ehlers*, 846 F.3d at 1008.

    **b. False Arrest**

The Fourth Amendment to the Constitution protects the right of people to be "secure in their persons . . . against unreasonable searches and seizures." U.S. Const. amend. IV. The Fourth Amendment includes the right to be free from arrest without probable cause. *Lambert v. City of Dumar*, 187 F.3d 931, 935 (8th Cir. 1999). The crux of Plaintiff's argument is that Defendant Hanson did not have probable cause to pull-over Decedent and as such, Defendant Hanson violated Decedent's constitutional rights to be free from unreasonable search and seizure.

"A Fourth Amendment seizure occurs when an officer restrains the liberty of an individual through physical force or show of authority." *Quraishi v. St. Charles Cnty., Mo.*, 986 F.3d 831, 839 (8th Cir. 2021). "Only when the officer . . . has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Terry v. Ohio*, 392 U.S. 1, 19 n.16, 88 S. Ct. 1868, 20 L.Ed.2d 889 (1968). To be seized, "a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S. Ct. 1870, 64 L.Ed.2d

---

[10] The only argument Plaintiff addresses in her Response to Defendants' Motion for Summary Judgment is excessive force, however, Plaintiff largely repeats her allegation and does not put forth any evidence showing that Defendant Hanson performed a PIT maneuver.

497 (1980). However, where an officer attempts a show of force and an individual does not submit, that individual has not been seized. *See, e.g., Johnson v. City of Ferguson*, 926 F.3d 504, 506 (8th Cir. 2019) (en banc) (*citing Brendlin v. California*, 551 U.S. 249, 254, 127 S.Ct. 2400, 168 L.Ed.2d 132 (2007)). Because Decedent did not submit to Defendants Hanson or Scott in their attempts to pull Decedent over, Plaintiff cannot establish that there was ever a seizure of the Decedent under the Fourth Amendment. Even assuming Plaintiff can show a Fourth Amendment seizure of Decedent, reasonable suspicion certainly existed for the officers to stop or attempt to stop Plaintiff and Decedent on the date of the incident, as well as probable cause to arrest Decedent.

Probable cause to make a warrantless arrest exists "when the totality of the circumstances at the time of the arrest are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense." *Ehlers*, 846 F.3d at 1009. Defendant Scott testified that he observed Decedent and Plaintiff begin driving on the road on two ATVs, a misdemeanor in violation of Arkansas Code § 27-21-106.[11] ECF No. 21-2. Defendant Scott radioed ahead to Defendant Hanson for assistance because Decedent and Plaintiff were not submitting to Defendant Scott's attempts to pull them over. Fleeing is a felony offense under Arkansas Code § 5-54-125. Defendant Hanson had probable cause to believe that Plaintiff and Decedent were committing offenses, thus Defendants did not violate Decedent's Fourth Amendment right.

Because Plaintiff cannot establish the violation of a constitutional right, Defendants are entitled to qualified immunity and summary judgment regarding this claim. *Ehlers*, 846 F.3d at 1008.

---

[11] In Plaintiff's reply to Defendants' Statement of Facts, she makes another general assertion that there are exceptions to driving an ATV on the road under Ark. Code § 27-21-106 without specifying which exception Plaintiff and Decedent would fall under or how this would defeat probable cause. ECF No. 26. Additionally, Plaintiff submitted Exhibit 26-1 which states that the "pursuit took place on a state roadway where a driver [Decedent] was observed riding an ATV (all-terrain vehicle) with loud mufflers and no helmet, which are both misdemeanor charges or minor infractions." ECF No. 26-1, p. 2.

## 2. 42 U.S.C. § 1983 Claim Against Columbia County

Plaintiff makes a 42 U.S.C. § 1983 claim against Columbia County Sheriff's Department alleging Defendant Hanson violated Decedent's rights pursuant to an unconstitutional policy, practice, or custom of the Department. As previously discussed, the Columbia County Sheriff's Department is not subject to suit. Thus, the Court construes this claim to be against Columbia County, however, her argument still fails.

When a plaintiff can point to a municipal policy that either "violates federal law, or directs an employee to do so," "no evidence is needed other than a statement of the municipal policy and its exercise" to establish a constitutional violation. *Brewington v. Keener*, 902 F.3d 796, 801 (8th Cir. 2018) (*citing Szabla v. City of Brooklyn Park Minn*., 486 F.3d 385, 389-90 (8th Cir. 2007)). However, when a plaintiff alleges an unwritten or unofficial policy, there must be "evidence of . . . a practice, so permanent and well-settled so as to constitute a custom, that existed." *Id*. (*citing Davison v. City of Minneapolis*, 490 F.3d 648, 659 (8th Cir. 2007)). To establish a claim for "custom" liability, Plaintiff must demonstrate: (1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) that plaintiff was injured by acts pursuant to the governmental entity's custom, *i.e.*, that the custom was a moving force behind the constitutional violation. *Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1160 (8th Cir. 2014) (*citing Johnson v. Douglas Cnty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2012)).

In her complaint, Plaintiff again makes blanket, unsupported assertions and does not point to any specific policy that violated a constitutional right. Nor does she bring forth any specific evidence of a wide-spread practice that is so well settled so as to constitute a custom. In fact, in

her response to Defendants' Statement of Facts, Plaintiff admits that Columbia County has, and had at the time of the incident, constitutionally appropriate policies in place to govern vehicle pursuits and the use of force by deputies. ECF No. 26, p. 3-4. Additionally, Defendants submitted evidence of the Department's polices including that the Columbia County Sheriff's Department does not permit PIT maneuvers. ECF No. 21-3, p. 49. Plaintiff has not demonstrated the existence of a continuing, persistent pattern of unconstitutional conduct. Assuming *arguendo* that Plaintiff could show Defendant Hanson performed a PIT maneuver deviating from the policy followed in the Columbia County Sheriff's Department, Plaintiff has failed to show that it was common or widespread throughout the department. Accordingly, Defendants are entitled to summary judgement regarding this claim.

### IV.  CONCLUSION

For the above-stated reasons, Defendants' Motion for Summary Judgment (ECF No. 19) is hereby **GRANTED**. This case is **DISMISSED WITH PREJUDICE**. A judgment of even date shall issue. Further, Defendants' Motion to Exclude Witness (ECF No. 28) is **DENIED as MOOT**.

**IT IS SO ORDERED**, this 17th day of November, 2023.

/s/ Susan O. Hickey
Susan O. Hickey
Chief United States District Judge